No. 13,213.

Roland LeSeigneur et als. vs. Mrs. Elina Bessan and Husband.

52   187
f 52  1954
52   2028

## Syllabus.

1. Questions or propositions of law submitted to the Supreme Court by the Court of Appeals for an opinion under Article 101 of the Constitution must be predicated upon specific facts of the particular case pending before that court, found by the Court of Appeals. It is not the right nor the duty of the Supreme Court to ascertain and fix facts and conclusions of fact. For the purpose of expressing an opinion it has to take as true facts of the case found by the Court of Appeals. If the party dissatisfied with the judgment of the Court of Appeals should succeed in having the case brought before the Supreme Court by *certiorari,* the latter should find itself in a situation to pass upon the facts and law of the case as if it had been carried before it directly by appeal from the District Court, and not be confronted by its own findings of fact fixed and declared by anticipation.
   The parties to the litigation are not bound by the facts as found and sent up to the Supreme Court by the Court of Appeals, nor does the former court itself stand committed to the same on a review of the case under Article 101, but it is free to review the evidence and ascertain the actual facts, and having so ascertained them to declare the law as applicable thereto.

2. The fact that the list of delinquent taxes and delinquent tax payers filed in the State Auditor's office under Act No. 42 of 1871, may have been recorded tardily in the office of the recorder of the parish where the land is situated, or filed tardily in the office of the Auditor, would not carry with it as a result the preventing of the vesting in the State of the title to the lands so returned as provided in that statute, when but for this fact the titles would have vested where rights of third parties had not intervened before the filing or recording of the lists.

3. If a husband's name appeared on the delinquent lists of 1873 under a proper and legal assessment of the property made in his name in 1872, while he was head of the community, the filing of the list in the Auditor's office under the Act of 1871, bound the community, though at the time of the filing the community may have been dissolved by the death of the husband. An assessment of property correctly described made in the name of the wife after the dissolution of the community by the death of the husband, is good as against the widow in community and her heirs, and the filing of the tax delinquent lists of property so assessed in the Auditor's office under the Act of 1871, carried with it as against the widow and her heirs a forfeiture of her interest in the property. The widow in community as usufructuary is bound to see that the taxes are paid.

The adjudicatee of property at a tax sale strictly such would not necessarily be protected from recovery of the same in a petitory action brought by the owner of the property by the prescription of three years because the tax purchaser had taken possession thereof and had held it for three years. If the sale was of a character such as to be absolutely null and void for radical nullities, the prescription of three years would not apply, otherwise if the sale was merely voidable for relative nullities.

4.   The purchaser of property sold by the State as being its property under a tax adjudication or tax forfeiture to it would not be protected by the prescription of three years from a recovery of the same by the owner in a petitory action. because of his having taken possession of the property under his title from the State and having held it for three years, if, at the time of the sale to him, the taxes had been paid by the owner and the property under the law stood redeemed to the owner.

ERTIFIED from the Court of Appeals, Third Circuit, by the Judges thereof applying for instructions.

*Foster & Broussard* for Plaintiffs.

*L. O. Hacker* for Defendants.

Petitory action to recover immovable property in the town of New Iberia, which defendants held by deeds from the State under tax proceedings against plaintiff's ancestors, which proceedings plaintiffs averred to be null and void conferring no title. From adverse judgment in the District Court plaintiffs appealed to the Third Circuit Court of Appeals, which affirmed the judgment of the District Court. Rehearing being granted, the Court of Appeals certified certain questions to the Supreme Court under Article 101 of the Constitution, attaching the pleadings and the original opinion of the Court of Appeals.

The following answers were given by the Supreme Court and ordered to be certified back to the Court of Appeals for its instruction and guidance:

NICHOLLS, C. J.   Article 101 of the Constitution declares that the "judges of the Court of Appeals shall have power to certify to the Supreme Court any question or proposition of *law* arising in any cause pending before them concerning which they desire the instruction of that court for its proper decision, and, thereupon, the Supreme Court may either give its instruction on the questions or proposition certified to it, or it may require that the whole record be sent up for its consideration, and, thereupon, shall decide the whole matter in

controversy in the same manner as if it had been on appeal directly to the Supreme Court."

It is obvious, from the reading of the article, that the questions or propositions submitted to the Supreme Court are questions predicated upon the specific facts of the particular case then pending before the Court of Appeals, and that it is not the duty of the Supreme Court to ascertain or fix the facts and conclusions of fact. For the purposes of expressing an opinion it has to take, as true, the facts of the case as found by the Court of Appeals.

That this must be so is evident from the fact that the parties to the action are not bound by the findings of the Court of Appeals so found, but are entitled, under the concluding clause of the article, to apply to the Supreme Court (if dissatisfied with the judgment rendered) for a writ of *certiorari,* to have the record certified up to it for review and determination.

If the application be granted, this court should find itself in a situation to pass upon the facts and law of the case as if it had been carried before it directly by appeal from the District Court, and not be confronted by its own findings of fact, fixed and declared by anticipation.

While the findings of the Court of Appeal are to be taken as true by the Supreme Court for the purpose of expressing an opinion at the request of that court, the Supreme Court must stand uncommitted as to the actual facts of the case, and also as to the law thereof, if the facts should be ultimately to be found otherwise than as declared by the Court of Appeals, and should that difference carry with it a change in the law of the case as applicable to the actual state of facts.

We understand the Court of Appeals to inquire of this court: 1st. —Whether the fact that the list of delinquent taxes and tax payers, filed in the State Auditor's office, under Act No. 42 of 1871, may have been recorded tardily in the office of the recorder of mortgages of the parish where the land is situated, or filed tardily in the Auditor's office, would carry with it, as a result, the preventing of the vesting in the State of the titles of the lands so returned as provided in that statute, when but for this fact the said titles would have so vested.

We answer that it would not have that effect.

We understand the question to refer exclusively to the situation between the delinquent debtor and the State, not to a case where the rights of third parties had intervened before the filing or recording of the delinquent lists.

The rights of *bona fide* purchasers, or creditors, do not seem to have been involved in the present matter, as it is submitted to us.

We are not informed as to the precise time of the year 1873, when P. LeSeigneur died, nor in whose name the property stood assessed in the tax delinquent lists for taxes of 1873, which were filed in 1873, if filed in that year. Under the law as then existing, taxes of each year were levied upon an assessment made the preceding year. If the husband's name appeared on that list, under a proper assessment of the property made in his name while head of the community, the filing of the delinquent lists in the Auditor's office, under the act of 1871, bound the community, though, at the time of the filing, the community may have been dissolved by the death of the husband. Caldwell vs. Hennen, 5 Rob., 20.

A correct assessment of property made in the name of the wife after the dissolution of the community by the death of the husband is good as against the widow in community and her heirs, and the filing of the tax delinquent list of property so assessed, in the Auditor's office, under the act of 1871, carried with it, as against the wife and her heirs, a forfeiture of her interest in the property.

The widow in community, as usufructury, is bound to see that the taxes are paid.

The husband's heirs would not be bound by such an assessment and the filing, under such circumstances, of the delinquent list in the Auditor's office.

The next question asked of this court is whether, if the property involved in this litigation was forfeited to the State under the Act of 1871, the plaintiffs would not necessarily be barred from recovering it by reason of the prescription of three years?

The circumstances under which this question of prescription is submitted for an opinion are a forfeiture of the property to the State, under the act of 1871, followed by a sale of the same property to the defendant, at public auction, under Act No. — of 1880 and a taking of actual possession by the defendant of the property purchased, and holding it for over three years.

The Court of Appeals is in error in supposing that an adjudicatee, even at a tax sale strictly such, would necessarily be protected from a recovery of the property adjudicated in a petitory action by the party owning the property at the time of the adjudication by the prescription of three years because the tax purchaser had, after the sale

to him, taken actual possession of the property and held it for three years.

Whether he would be so protected would depend upon the character of the sale or adjudication made to him. If the sale should have been of a character such as to be absolutely null and void, and to entitle or authorize the original owner to ignore it and bring a direct petitory action to recover the property, the prescription of three years would not apply, but if the adjudication was only subject to attack for relative nullities, and that fact should be developed on the trial of the case, the plaintiff's direct petitory action would fail, as the prescription of three years would bar an attack upon the tax title, and it would stand as a barrier blocking the way for a petitory action.

Assuming that certain property had been legally forfeited to the State for taxes, it would by no means necessarily follow that a subsequent purchaser from the State, who, under the sale had taken actual possession of property and held it for over three years, would be protected by the prescription of three years from a recovery in a petitory action of the same, by the party owning it at the time of the forfeiture.

If, for instance, subsequently to the forfeiture and prior to the sale to the third person the taxes had been paid by, or for, the owner, or the property had been redeemed by, or for, him, the sale by the State would have been made without any right or authority, and would convey no title to its vendee.

The vendee, under such circumstances, would not hold under a direct tax adjudication to him, but under a sale made by the State, as an owner of property, which really did not belong to it, but to a third person.

The prescription of three years would not be applicable to such a condition of affairs.

We referred, in Gulf State Land and Improvement Co. vs. Wade, 51 Ann., 260, to the differenece between a tax sale strictly such, and a sale made by the State, as owner, to obtain from its purchaser an amount equal to the taxes which would have been upon it in the ownership of a private citizen instead of its own.